# Wytheville

## CHARLES O. SAVILLE, CLERK, ETC. v. CITY OF RICHMOND.

June 14, 1934.

Present, All the Justices.

The opinion states the case.

*Smith & Gordon,* for the petitioner.

*James E. Cannon,* for the respondent.

HUDGINS, J., delivered the opinion of the court.

Charles O. Saville, clerk of the Chancery Court of the city of Richmond, filed in this court his original petition for mandamus to compel the city of Richmond to furnish him with the necessary books in which to make a permanent record of deeds, deeds of trust, mortgages, contracts and agreements, and to pay Everett Waddey Company

the sum of $215 for four of such books already ordered and delivered. He further alleges that unless other record books are furnished forthwith it will be impossible for him to comply with the law requiring recordation of these instruments; that both petitioner and the judge of the chancery court have requested the proper State and city authorities to furnish the requisite books, and in each instance the request has been denied; that the State Division of Purchase and Printing, acting upon the advice of the Attorney General, refused to purchase the books on two grounds, (1) that the General Assembly made no appropriation therefor, and (2) that the amendment to section 121 of the Tax Code, adopted in 1932 (Acts 1932, ch. 185 [Code Supp. 1932, appendix, p. 216]), was unconstitutional. This amendment reads:

"The Division of Purchase and Printing shall furnish to such clerks at the cost of the State suitable and necessary books for properly recording and indexing the deeds, deeds of trust, mortgages, leases, contracts, and agreements on which recordation taxes are collected under this section."

He also alleged that the comptroller of the city of Richmond, pursuant to an ordinance approved March 31, 1934, had allocated the sum of $4,000 to the chancery court, to be expended for stationery, books and other supplies for the maintenance of that office, but, acting on the advice of the city attorney, the city authorities had refused to pay for the books already furnished by Everett Waddey Company, or to furnish any other books for the recordation and indexing of "deeds, deeds of trust, mortgages, leases, contracts, and agreements on which recordation taxes are collected."

To this petition the city of Richmond filed a demurrer on the grounds, (1) that petitioner was not injured by the refusal of the city to furnish the books enumerated, and therefore had no interest in testing the constitutionality of the act in question; (2) that chapter 185 of the Acts of 1932 was unconstitutional; (3) that the act of

March 25, 1930 (Acts 1930, ch. 402), requiring cities with a population of 170,000 or more to provide rooms and such books, stationery, supplies and equipment as may be necessary for the court of record of such cities and the clerk's offices thereof, is a general law and was repealed by chapter 185 of the Acts of 1932.

 It is elemental that the person applying for relief by mandamus must show a clear legal right to have the duty sought to be enforced performed by the defendant in the manner specified in the petition. *Board of Supervisors* v. *Combs*, 160 Va. 487, 169 S. E. 589. Chapter 132 (section 3378 *et seq.*) of the Code of 1919 imposes upon the clerks of courts the duty to record and index the instruments enumerated in the petition, and describes the type of paper which must be used for this purpose. The proper recordation of the instruments enumerated is of vital concern to the public, and, in addition, the clerk receives a fee for each instrument so recorded, hence the petitioner in this case has not only an important public duty to perform, but a personal financial interest in obtaining the books for the proper performance of this duty. See *Wise* v. *Bigger*, 79 Va. 269; *Richmond Ry. & Electric Co.* v. *Brown*, 97 Va. 26, 32 S. E. 775; *Board of Supervisors* v. *Combs, supra.*

It follows that the first ground of demurrer is not well taken, certainly in so far as it is the duty of the city to furnish in the future the books required by petitioner. The $215 owing to Everett Waddey Company for books already delivered must be paid to the creditor by the city or by the State, depending upon whether the legislature has directed that such books be furnished by the State or by the localities. In the payment of this debt, petitioner has no personal interest.

 Both before and since the adoption of the 1919 Code, the policy of the State has been to require the cities and counties to furnish at their own expense offices for the clerks of courts, including the necessary equipment, furniture, and supplies. Chapter 115 (section 2854 *et*

*seq.*), Code of 1919. Section 2767 was taken from section 846, Code of 1887, reading thus:

"The board of supervisors shall, at the expense of the county, provide suitable books and stationery for the use of the clerk of their board, the county treasurer, the county clerk, and the clerk of the circuit court, together with appropriate cases and other furniture, for the safe and convenient keeping of all the books, documents, and papers in the custody of each of said officers, where the same are required by law."

In addition to the above provision, section 3400 of the 1919 Code provides that:

"Every clerk shall procure such books for records as the business of his office requires, but orders for the same shall first be obtained by the county clerks from the board of supervisors, and by the clerks of the corporation and city courts from the council of such city. Said clerks shall have custody of, and shall keep all books, records, maps and papers deposited in their offices."

Section 2767 was amended in 1920 to include " * * * such other office equipment and appliances, including typewriters and adding machines, as in their judgment may be reasonably necessary for the proper conduct of such offices;" and in 1926 to include commissioners of the revenue and to apply to cities with a population of not more than 100,000. See Acts of 1920, ch. 168, p. 242, and Acts of 1926, ch. 492, p. 844. Section 3400 remained unchanged.

In 1928 the General Assembly (ch. 45) combined the general tax and revenue statutes in one act, entitled "An act to revise, simplify, arrange and consolidate into one act the general tax and revenue statutes of the Commonwealth, which act shall constitute, and be designated and cited as 'the Tax Code of Virginia'." This act contains 441 sections and comprises 217 printed pages. Section 299 of the act reads as follows:

"The board of supervisors of each county shall, at the expense of the county, and the city council of each city shall, at the expense of the city, provide suitable books

and stationery in addition to supplies furnished by the State, for the use of the commissioner of the revenue, the county treasurer, the county clerk, and the clerk of the circuit court, together with appropriate cases and other furniture, for the safe and convenient keeping of all the books, documents, and papers in the custody of each of said officers, and also official seals for each of said officers, where the same are required by law, and also such other office equipment and appliances, including typewriters and adding machines, as in their judgment may be reasonably necessary for the proper conduct of such offices."

This act (section 436) expressly repealed section 2767 of the Code, but made no reference to section 3400, which still applied to clerks of corporation and city courts.

The General Assembly of 1930 again amended the provisions of this statute by including therein, "the clerks of all city courts of record," under an act entitled: "An act to amend and re-enact section 299 of the Tax Code of Virginia, in relation to the furnishing of supplies and equipment by counties and cities for certain State officers." See Acts of 1930, ch. 422, p. 917. This act contained an emergency clause, and specifically repealed all acts, or parts of acts, in conflict therewith, but made no specific reference to section 3400.

On the same day, i. e., March 25, 1930, the legislature adopted another act, reading thus:

"Be it enacted by the General Assembly of Virginia, that the cities of the State having a population of one hundred and seventy thousand or more by the United States census of nineteen hundred and twenty, be and they are hereby, required to provide such room or rooms and such books, stationery, supplies and equipment as may be necessary for the courts of record of said city and the clerk's offices thereof.

"An emergency existing, this act shall be in force from its passage." Acts of 1930, ch. 402, p. 862.

The city contends that the 1932 amendment to section 121 of the Tax Code is a general law and repeals that pro-

vision of the 1930 act which requires cities having a population of 170,000 or more to provide the necessary books, stationery, supplies, and equipment for the clerk's offices of courts of record. Petitioner contends that inasmuch as Richmond is the only city in the Commonwealth which has a population of 170,000 or more, it is a local act and applies only to that city, and therefore is not repealed by the amendment to section 121 of the Tax Code. No reference is made in either brief to section 299 of the Tax Code or to its re-enactment in 1930. If the city's contention is correct, the amendment to section 121 of the Tax Code repeals the act imposing this obligation upon cities with a population of more than 170,000, and also repeals section 299 of the Tax Code, as amended in 1930, imposing the same obligation upon every county and city, thereby changing the policy of the Commonwealth declared in the Code of 1849, chapter 176, Code of 1887, section 846, and Code of 1919, sections 2767 and 3400, with the amendments to said sections set forth above.

For the State, through the Department of Purchase and Printing, to purchase the books enumerated for the 117 clerks' offices would require the annual expenditure of quite a large sum. If it was the intention of the legislature to make this change in policy we would naturally expect to find in the budget the proper appropriation therefor. No sum was appropriated for this purpose, either by the regular session of 1932, the special session of 1933, or the regular session of 1934. Notwithstanding the amendment to section 121, each locality, at its own expense, has continued to furnish the clerks' offices with the books in question, and it was not until the fall of 1933, some eighteen months after the amendment was adopted, that the city of Richmond refused to furnish the books for recordation of said instruments to the clerk of the chancery court of the city.

While these facts are not binding upon the court, they should be considered in deciding whether or not the legislature intended to bring about a decided change in the

public policy of the State which has been in force for approximately 100 years.

■ With these facts in mind, we again examine both the title of the act (chap. 185, Acts of 1932, p. 360) and its contents. The title reads thus: "An act to amend and re-enact section 121 of the Tax Code of Virginia, in relation to recordation taxes on deeds, deeds of trust, mortgages, leases, contracts and agreements."

This section of the Tax Code, as adopted in 1928, is confined to prescribing the tax and the method of computation thereof to be levied on deeds, deeds of trust, contracts and other instruments admitted to record. The only change made in the section by the amendment of 1932 was the addition of one paragraph, heretofore quoted, but for convenience repeated here, as follows:

"The Division of Purchase and Printing shall furnish to such clerks at the cost of the State suitable and necessary books for properly recording and indexing the deeds, deeds of trust, mortgages, leases, contracts, and agreements on which recordation taxes are collected under this section."

This addition, of which no hint is given in the title, transfers from the localities to the State the duty of furnishing such books to the 117 clerks' offices thereby affected, and brings the amendment within the prohibition of section 52 of the Constitution. The purpose of this wise and wholesome provision is to prevent the members of the legislature and the public from being misled by the title to a proposed law.

"It (section 52 of the Constitution) was intended to prevent the use of deceptive titles as a cover for vicious legislation, to prevent the practice of bringing together into one bill for corrupt purposes subjects diverse and dissimilar in their nature, and having no necessary connection with each other; and to prevent surprise or fraud in legislation by means of provisions in bills of which the titles gave no intimation." *Commonwealth* v. *Brown,* 91 Va. 762, 21 S. E. 357, 360, 28 L. R. A. 110.

Members of the General Assembly, with knowlege of

the provisions of section 121 of the Tax Code and the history of the legislative enactments requiring cities and counties to furnish books in which to record instruments filed with the clerks, would have no intimation, from reading the title of the act in question, of the fact that its provisions brought about such a decided change in public policy. For more than fifty years each legislature that dealt with the two subjects, *i. e.,* the levying of the tax on deeds, deeds of trust, contracts, etc., and the duty to furnish the books in which such instruments were to be recorded, had treated the two in separate sections. This is equally true of the Code Revisors of 1849, 1887 and 1919. The same method was followed in adopting the Tax Code in 1928, section 121 levied the tax and section 299 imposed the duty upon the localities to furnish the books.

In view of all the facts and circumstances of this case, we are constrained to hold that the provision requiring the Department of Purchase and Printing to furnish the clerks, at the cost of the State, suitable and necessary books for recording the instruments enumerated, is invalid, because no such provision was intimated by the title.

As heretofore stated, the $215.00 which petitioner alleges is owing to Everett Waddey Company is a claim which this company has against the city of Richmond, but petitioner has no personal interest in the debt which entitles him to collect it by mandamus. To that extent the demurrer is sustained.

The petition contains no definite allegation showing the number and cost of the books needed for the proper recordation of the instruments enumerated at the time of its filing, but inasmuch as the city made no reference to the omission we assume that it waived its right to raise this objection.

For the reasons stated, our conclusion is that it is the duty of the city, at its own expense, to furnish the books enumerated in the petition to the clerk of the chancery court, and that having refused to perform this duty a mandamus will be awarded to compel it to do so.